FRED. L. HICKOX, APPELLANT, vs. B. L. ANDERSON, APPELLEE.

1. In an action for the conversion of specific property, if the defendant fail to deny, upon demand made, his possession of such property, such failure will be regarded as an admission by him of such possession, and in the absence of any evidence to the contrary on the trial, is sufficient to sustain the action, notwithstanding a general denial in the pleading.

2. When the evidence is not conflicting, the plaintiff having made out his case, the defendant failing to introduce any evidence to controvert, and the verdict being squarely in opposition to all the evidence and the charge of the court, a new trial will be granted.

Appeal from the Circuit Court for Escambia county.

In the month of January, 1882, Hickox brought his action in trover against Anderson, in Escambia county Circuit Court, for the conversion of sixty-nine pieces of pine timber. The defendant was an Inspector of Timber at Ferry Pass, and plaintiff alleged that defendant received said timber from him for inspection, and refused to deliver to him on demand. The defendant's plea was not guilty.

The cause was tried before a jury on the 26th day of April, 1882, and they found for the defendant. Judgment was thereupon ordered in favor of the defendant. The plaintiff thereupon moved for a new trial, which motion was denied, and he brings his case to this court by appeal. The grounds upon which plaintiff asked a new trial are as follows:

1st. The verdict was contrary to the evidence.

2d. It was contrary to the law.

3d. It was contrary to the charge of the court.

The assignment of errors is as follows: " The appellant assigns as error the refusal of the court below to grant the motion for a new trial."

The other facts are stated in the opinion.

*John C. Avery* and *W. A. Blount* for Appellant.

*J. P. Jones* and *G. A. Stanley* for Appellee.

Mr. Justice VanValkenburgh delivered the opinion of the court:

Hickox, the plaintiff in this action, alleges that the defendant, Anderson, converted to his own use sixty-nine sticks of hewn timber of the value of six hundred dollars, being the property of the plaintiff. The defendant denies the allegation.

The cause was tried at the Escambia Circuit in April, 1882, and the jury found a verdict for the defendant. The counsel for plaintiff moved for a new trial upon the following grounds:

1st. The verdict was contrary to evidence.

2d. It was contrary to law.

3d. It was contrary to the charge of the court.

The court denied the motion, and the plaintiff appeals to

this court and assigns for error : " The refusal of the court to grant the motion for a new trial."

The question, therefore, arises only upon the evidence before the jury.

The plaintiff to sustain his case introduced several depositions and witnesses.  By Lewis Johnson he proved that Johnson was acquainted with the timber, which consisted of sixty-nine pieces, averaging about 100 feet ; that he held it for the plaintiff ; that he took charge of it at Castleberry, Alabama, and delivered it at Ferry Pass ; that he held it to get his money out of it ; that the plaintiff employed him to take it there for inspection; that he was working for the plaintiff, and delivered it to Mr. Anderson's timber agent ; that Mr. Anderson was a Timber Inspector ; that his agent gave him a receipt for the timber ; that he carried such receipt to Mr. Anderson, who gave him twenty dollars to come home on, and told him that it was not necessary for him to give a receipt for the timber.  The witness, Lampey, testifies that he looked at the timber to see the scores ; that one George M. Jones sold it to the plaintiff ; that he hauled or had hauled the sixty-nine pieces ; that it was good timber excepting being soft edged ; that he thought it would average more than one hundred feet. W. J. Ellis deposed that the plaintiff employed him to brand the timber and to superintend the running of it as far as Brewton ; that he branded the larger portion of it with the letters F. H., according to instructions from the plaintiff ; that it was branded with the knowledge and assent of George M. Jones from whom the plaintiff got it ; that he turned over the timber at Brewton to Lewis Johnson to be carried to Ferry Pass for account of the plaintiff.

The plaintiff testified that this timber was his property, bought it in June, 1881, from George Jones ; that he sent it to Ferry Pass, Florida, by Lewis Johnson for the pur-

pose of having it inspected ; that he instructed Johnson to deliver it to the defendant.; there were sixty-nine pieces of hewn timber of about one hundred feet average, and sap damaged ; latter part of December last he sent his agent, L. N. Nicholson, to Ferry Pass to take charge of it ; that he never was paid for or recovered the timber.

L. N. Nicholson testified that on 27th December last, as agent of plaintiff, he went to Ferry Pass and demanded the timber of the defendant, but that he did not deliver it to him. The defendant then claimed that he did not inspect the timber for plaintiff, but for George Jones. He claimed his authority for so doing was a letter from the plaintiff. He asked Anderson for the specifications of the timber, but did not receive them, defendant asserting that he had delivered them to Jones ; that he did not deny having received the timber from Johnson ; that he procured a writ of replevin for the timber, and placed it in the hands of the sheriff of Escambia county, and then, with the sheriff, returned and demanded the .timber from defendant; that they did not get it, but the defendant told the sheriff that the timber was out of his jurisdiction ; that it was in Santa Rosa county, in East river ; that witness then proceeded to Santa Rosa county, procured another writ of replevin, and with the sheriff proceeded to East river, but could not find the timber; that he then again demanded it from the defendant, who said it had been shipped.

H. Baars testified that in latter part of December, 1881, he purchased in Pensacola a raft of sixty-nine pieces of sap damaged, one hundred foot average, hewn timber, and paid for it $652.74.

The defendant testified that the timber was sold by Mr. Jones to H. Baars ; that he did not know anything about .Mr. Hickox's timber; that he received in latter part of December, 1881, for inspection a raft of sixty-nine pieces

of timber, from George Jones; that he don't know that he received it from Hickox or from Lewis Johnson. He don't know that he ever saw Lewis Johnson. Don't know him, and never had any transaction with him.

The plaintiff here rested his case, and the defendant testified in his own behalf as follows: I inspected for George M. Jones, in the latter part of December, 1881, a raft of 69 pieces of timber, which he said belonged to him. He was at Ferry Pass for several days before the timber came down the river. He said he was expecting some timber down. I receipted to him for it .and gave him the specifications. He paid the hands in my office. He was in my office when the timber came down the river. He pointed it out and said that was his. I had previously received the following letter from the plaintiff:

*Mr. B. L. Anderson, Ferry Pass, Florida:*

DEAR SIR—Lewis D. Johnson has started from Brewton with 69 pieces of timber, belonging to me, with instructions to deliver to you for inspection. Mr. George M. Jones is interested in the inspection and sale, and said he would be there when the timber reached you, and perhaps he may go down on the raft. Please pay to Johnson and his hands money enough to bring them home. I will settle the balance here. If you cannot make specifications for them immediately, give them a receipt and send me specifications by mail, unless you receive different instructions from me.

Yours truly,

FRED. L. HICKOX,

per S.

Jones said to witness the timber was his; that it did not belong to the plaintiff. He said he owed plaintiff some money, but he would fix that when he went back to Evergreen. He said Hickox's raft was another one, not that one. I inspected the timber and gave him the specifications.

Mr. Nicholson did call on me in December and demanded certain timber. I think he called it the Jones timber. I never received the timber from Lewis Johnson. I told Nicholson, when he came to Ferry Pass making inquiries concerning the timber, that it was in East river. Before he returned from his search there Mr. Baars had sent for the timber and shipped it. I never sent the telegram produced in evidence by Hickox. I received no other timber from Hickox for a year or more previous to December last. Have received none since.

One —— Anderson, for defendant, testified : I am the brother of the defendant. Have been in his employ off and on for several years. Was in his employ, and authorized to receive timber for him, last December. No timber was received by defendant through me from Lewis Johnson. There were three of us who were authorized to receive timber for the defendant at that time—the defendant, myself and *one other*. There were about a dozen employed to be up and look after timber. The telegram offered by Hickox in evidence was sent by me by mistake. It was intended to be sent to Mr. Savage, but I made a mistake and sent it to Hickox. Shortly after sending the telegram to Hickox I discovered the mistake and corrected it by sending to Savage. I knew Mr. Hickox about thirteen years ago, but have not seen him since. We have not received timber from him prior to December last for about seven years. Jones and the raft hands were in our office, and the money for the hands to return home on was paid to them by Jones.

This is the evidence as appears by the bill of exceptions. Was the defendant entitled to a verdict ? Although it may not have been necessary, (18 Fla., 57,) yet the plaintiff proved title to the property in himself. He says in his evidence : " It is my property ; I bought it in June, 1881,

in Evergreen, Alabama, from George Jones." Lampey says: "Jones sold it to Hickox." The timber was in the actual possession of the plaintiff. Lewis Johnson says that he held it for the plaintiff; that he took charge of it on the eighteenth of October, last year; that plaintiff got him to carry it to Ferry Pass. Ellis says he branded most of the timber F. H. according to instructions of the plaintiff; that it was so branded with the knowledge and assent of George M. Jones, from whom the plaintiff got the timber; that he superintended the timber as far as Brewton, where he delivered it to Lewis Johnson to be carried to Ferry Pass for account of the plaintiff. Plaintiff says: "I sent it down to Ferry Pass, Florida, by Lewis Johnson, a colored man, for the purpose of having it inspected."

Was it delivered by Lewis Johnson to the defendant? He testifies: I delivered it to Mr. Anderson's timber agent, I don't know his name. I delivered it so as to get my money. I was working for Mr. Hickox. Mr. Anderson's agent gave me a receipt for the timber, and I carried that receipt to Mr. Anderson and he gave me twenty dollars to come home on, and he told me it was not necessary to give me a receipt for the timber.

By the witness, Nicholson, the plaintiff proves a demand of the timber from the defendant.

Here is proof of title, possession, delivery and demand for return of the property.

The evidence on the part of the defendant does not show Jones at any time in the possession of the property, or any actual delivery by him to the defendant. The defendant testifies in his own behalf that Jones was at Ferry Pass several days before the timber came down the river; that he was in the defendant's office when the timber came down the river, and pointed it out, and said it was his. Nowhere does it appear that Jones at any time or place had

possession or control of the raft. ———— Anderson, a brother of the defendant, says: " No timber was received by defendant, brought *me* from Lewis Johnson. There were *three* of us who were authorized to receive timber for the defendant at that time. The defendant, myself and *one other*. There were about a dozen employed to be up and look after timber." The defendant, however, relies upon the letter received from Hickox, and which is introduced in his evidence. This letter does not authorize the turning over the specifications to Jones, or the giving to him the possession of the timber. It advises the defendant that plaintiff is the owner, and that Jones is merely interested in the *inspection and sale* of the timber, and directs the defendant to pay Johnson money enough to bring him and the hands who accompanied him home, to send him, plaintiff, a receipt for the timber, and specifications. It does not authorize the defendant to give Jones any authority or power in respect to the disposition of the timber. There is no evidence to show that the defendant was not in the possession of the property at the time of the demand. He did not surrender it to the plaintiff when it was demanded, and he did not deny the fact of his possession. He said that it was in East river, and that before Nicholson returned from his search for it Baars had sent for it and shipped it. He should have denied having possession at the time of the demand, if such was the fact. His silence upon the subject, when the demand was made and repeated, as appears by the evidence of Nicholson, must be taken as an admission of the fact that it was in his possession, and in the absence of any contrary evidence of the trial is sufficient to sustain the action, notwithstanding the general denial. Kimball vs. Post, 44 Wis., 472.

The evidence in this case is not conflicting, there is nothing to disprove the allegations in the declaration, and the

plaintiff having made a case the defendant failed to produce evidence to controvert it, but really sustains it. The verdict was squarely in conflict with the evidence and the charge of the court, and a new trial should have been granted. Wilson vs. Marks, 18 Fla., 322.

The judgment must be reversed and a new trial awarded.